Filed 12/26/13  Lieberman v. City of Los Angeles CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| B. JAMES LIEBERMAN, | B243466 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC112186) |
| v. |  |
| CITY OF LOS ANGELES et al., |  |
| Defendants and Respondents. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Norman Tarle, Judge.  Affirmed.

―――――

Law Offices of Gary S. Casselman, Gary S. Casselman and Danielle Leichner Casselman for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Amy Jo Field, Supervising City Attorney, and Blithe S. Bock, Deputy City Attorney, for Defendants and Respondents.

―――――

B. James Lieberman appeals from the judgment entered after the trial court granted summary judgment for the City of Los Angeles and four Los Angeles Police Department (LAPD) officers (collectively, defendants) in his action against them for violation of Civil Code section 52.1, subdivision (b), battery and negligence. Lieberman contends triable issues of disputed material facts precluded summary judgment. We disagree and thus affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Complaint*

On April 11, 2011, Lieberman filed an action against the City of Los Angeles, two police officers and Doe defendants alleging causes of action for violation of Civil Code section 52.1, subdivision (b), battery and negligence. According to the complaint, on or about May 12, 2010, Lieberman, "a senior citizen, was a U.S. census worker, acting in the capacity as [a] census numerator, and at all times relevant hereto had proper identification badge, vehicle placard(s) and other census issued materials clearly identifying him as such." About 1:30 p.m., Lieberman sat inside his vehicle reviewing paperwork outside the home he was scheduled to visit next when, "[w]ithout reasonable suspicion to detain or probable cause to search or arrest, . . . police officers . . . point[ed] their guns at him and ordered him to exit the vehicle with his hands up." Lieberman complied and identified himself as a census worker. Lieberman was handcuffed in an "unreasonably tight manner" and "exclaimed in pain" when a "male officer removed the handcuffs . . . ." Lieberman was "told that he was stopped because someone had complained that a person was knocking on doors, ringing doorbells, looking in windows and/or walking onto driveways in the Beverlywood, area of Los Angeles, though this was not sufficient probable cause or reasonable suspicion to seize [him]." Lieberman sought compensatory, special and punitive damages, as well as attorney fees and costs pursuant to Civil Code section 52.1, subdivision (h), based on his cause of action under that statute. Lieberman amended his complaint, substituting in four police

2

officers as Doe defendants, and later dismissed the action without prejudice as to the two police officers originally named in the complaint.[1]

2.      *The Summary Judgment Motion and Opposition*

Defendants moved for summary judgment, arguing that Lieberman's detention was objectively reasonable based on a reasonable suspicion of burglary and did not convert into an arrest requiring probable cause. Defendants also argued that handcuffing Lieberman was objectively reasonable under the circumstances, as was the use of force applied in the handcuffing. Lieberman opposed summary judgment, contending that triable issues of material fact existed as to whether his detention amounted to an arrest requiring probable cause and the use of force was excessive.

3.      *The Trial Court's Ruling*

The trial court granted the motion for summary judgment. It concluded that, as a matter of law, the police officers detained Lieberman pursuant to a valid "Terry-stop" and did not affect an arrest of him. It then determined that no triable issue of material fact existed as to the reasonableness of the detention. According to the court, the officers were informed of "a 911 call about an attempted residential burglary. [The officers] responded with guns drawn and immediately handcuffed [Lieberman]. Within five to 25 minutes, they were satisfied that [Lieberman] was merely a census worker, and they removed the handcuffs. After another twenty minutes, during which time the officers talked to the 911 caller and also to [Lieberman], they released him. While [Lieberman's] shoulder and wrist injuries are an unfortunate result of [the] activity, and while it is possible [the officers] could have, in hindsight, used less force, the Court cannot find triable issues of material fact with respect to the force used in the case." The court entered judgment for defendants. Lieberman filed a timely notice of appeal.

---

[1]      The four police officer defendants are Officers Jeannette Garcia, Antonio Lacunza, Richard Ballesteros and Andre Rodriguez.

3

**DISCUSSION**

1.      *Standard of Review*

A trial court must grant a summary judgment motion when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We independently review the trial court's decision, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

2.      *Summary Judgment Was Proper*

        a.      *The detention issue*

Lieberman contends the trial court erred by summarily resolving his cause of action for violation of Civil Code section 52.1, subdivision (b)[2], because, at a minimum, triable issues of material fact exist as to whether his detention, which he concedes was lawful, amounted to an illegal arrest for which the police officers lacked probable cause.

"The federal Constitution's Fourth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits unreasonable seizures. Our state Constitution includes a similar prohibition. [Citation.] 'A seizure occurs whenever a

---

[2]      Civil Code section 52.1, subdivision (b), provides, "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, [by threats, intimidation, or coercion,] may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured."

4

police officer "by means of physical force or show of authority" restrains the liberty of a person to walk away.' [Citation.]" (*People v. Celis* (2004) 33 Cal.4th 667, 673 (*Celis*).) A seizure amounting to an arrest requires that the police officer have probable cause to justify his or her actions. (*Gallegos v. City of Los Angeles* (9th Cir. 2002) 308 F.3d 987, 990 (*Gallegos*).) In *Terry v. Ohio* (1968) 392 U.S. 1, 9 (*Terry*), the United States Supreme Court "'created a limited exception to th[e] general rule' that police detentions require probable cause, wherein 'certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime.' [Citation.] Under *Terry* and its progeny, the Fourth Amendment allows police to conduct a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that justifies their actions. The reasonable suspicion standard 'is a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.' [Citations.]" (*Gallegos*, at p. 990.) "Thus, an officer who lacks probable cause to arrest can conduct a brief investigative detention when there is '"some objective manifestation" that criminal activity is afoot and that the person to be stopped is engaged in that activity.' [Citations.]" (*Celis*, at p. 674.)

"There is 'no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest.' [Citation.] Rather, whether a police detention is an arrest or an investigatory stop is a fact-specific inquiry, [citation], guided by the general Fourth Amendment requirement of reasonableness, [citation]. This inquiry requires us to consider 'all the circumstances surrounding the encounter' between the individual and the police, [citation], 'by evaluating not only how intrusive the stop was, but also whether the methods used [by police] were reasonable *given the specific circumstances*,' [citation]." (*Gallegos*, 308 F.3d at p. 991.) "Because an investigative detention allows the police to ascertain whether suspicious conduct is criminal activity, such a detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.' [Citations.]" (*Celis*, *supra*, 33 Cal.4th at p. 674.) The "'focus [is] on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the

5

circumstances.' [Citations.] Important to this assessment, however, are the 'duration, scope and purpose' of the stop. [Citation.]" (*Id*. at p. 675.)

"With respect to duration, the United States Supreme Court has said that '"the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion."' [Citation.] [¶] With regard to the scope of the police intrusion, stopping a suspect at gunpoint, handcuffing him, and making him sit on the ground for a short period . . . do not convert a detention into an arrest. [Citations.] [¶] Of significance too are the facts known to the officers in determining whether their actions went beyond those necessary to effectuate the purpose of the stop, that is, to quickly dispel or confirm police suspicions of criminal activity. [Citations.] Although a routine traffic stop would rarely justify a police officer in drawing a gun or using handcuffs, such actions may be appropriate when the stop is of someone suspected of committing a felony." (*Celis*, *supra*, 33 Cal.4th at pp. 675-676.)

As relevant to the detention question, according to the undisputed facts here, on May 12, 2010, Officers Garcia and Lacunza, while on patrol in West Los Angeles, received a radio broadcast from LAPD communications, based on a 911 call from a Beverlywood resident. The broadcast stated, "'West LA units, 459 suspect there now, 9722 Alcott, 9722 Alcott, suspect vehicle is a white BMW still outside, suspect is male white, 60 years, white hair, beige shirt, short sleeve shirt, Code 3, NRD857.'" The officers interpreted the call as one reporting a residential burglary, as Penal Code section 459 is the burglary statute, and responded, according to the communication, Code 3, which requires officers to respond as quickly as possible with lights and sirens. Within minutes, the officers heard a second broadcast, which stated, "'West LA units responding to Alcott Avenue, suspect attempted to gain entry through the mail slot, suspect is still in front of location inside the white BMW, has handicap[] tag in the mirror, suspect is unknown to the victim, victim is still inside location.'" A third broadcast came minutes later, reporting, "'Suspect vehicle is now driving towards

6

Beverwil.  Suspect is making a left on Beverwil from 9722 Alcott.  Suspect vehicle is a white BMW with a handicap[] placard in the mirror.'"

Officers Garcia and Lacunza located the suspect, who was identified as Lieberman, as reported by LAPD communications.  Lieberman was ordered out of his vehicle at gunpoint and detained while the 911 call was investigated.  Officers Ballesteros and Rodriguez, along with two other officers, arrived on the scene and assisted with the investigation.  Lieberman was placed in handcuffs by Officer Garcia, who explained that, "based on the type of radio call that we were responding to—and . . . burglary suspects could have . . . weapons and tools [that] can be used as weapons—yeah, technically he was a [possible] threat."  Based on the LAPD communications, the officers considered that they were responding to "a high-priority crime" as "a high risk traffic stop."

Lieberman remained in handcuffs for five minutes (according to the accounts of Lieberman and Officer Garcia) to 25 minutes (according to Officer Ballesteros whose primary involvement was interviewing the 911 caller).  Lieberman identified himself as an enumerator for the United States Census Bureau, showed officers his credentials and told them he was visiting homes of people who had not turned in their census material.  According to Lieberman, his job was to knock on doors in an attempt to deliver notifications to those at the homes he visited; if no one answered, he left the notifications on the front porch.  Two officers went to the residence of the 911 caller and interviewed her.  According to Officer Ballesteros, who was the primary interviewer, the caller reported that a man had been "pounding on [her] door, knocking on the door.  She didn't know who it was.  And he was grabbing the doorknob trying to get inside the door.  And . . . he put his hands inside the mail slot . . . .  She seemed very fearful for her safety . . . ."  Based on this report and the officers' contact with Lieberman, Lieberman was unhandcuffed and released soon thereafter.  Officer Ballesteros explained to Lieberman that that "there had been a call of a possible burglary and that he matched the description" of the suspect.

These undisputed facts demonstrate as a matter of law that Lieberman was legally detained not, as he contends, arrested without probable cause.  Based on the LAPD

7

communications, the officers understood they were responding to a report of a burglary, a possible violent and serious violent felony (Pen. Code, §§ 667.5, subd. (c)(21), 1192.7, subd. (c)(18)), or attempted burglary, a possible serious felony (*id*. at § 1192.7, subd. (c)(18) & (39)), with a suspect who had left the location. Lieberman was handcuffed from five to 25 minutes. He was released as soon as officers had completed their investigation. Given the nature of the LAPD communications, handcuffing Lieberman for no more than 25 minutes did not, as Lieberman suggests, transform the detention into an arrest. The officers used the detention to "quickly dispel . . . police suspicions of criminal activity." (*Celis*, *supra*, 33 Cal.4th at p. 676.)

Contrary to Lieberman's contentions, his age of 78 years old (not 60 years old as reported by LAPD communications—although he appeared much younger than his actual age) and immediate identification of himself to the officers as a census worker did not create triable issues of material fact on the detention question. Lieberman assumes that, despite communications to the officers of a burglary or attempted burglary, they should have concluded their detention of him once they learned that he was 78 years old and a census worker and their failure to do so converted the detention into an arrest. But such facts did not eliminate the possibility that a felony offense had been committed. Indeed, the officers did account for Lieberman's age because, although they handcuffed him, they elected under the circumstances not to require him to lie prone on the ground. In total, the detention was of relatively short duration, narrowly tailored to address the reports received by the officers and in line with the potential crimes being investigated.

This case is similar to *Gallegos*, *supra*, 308 F.3d 987, in which the Ninth Circuit concluded on summary judgment that a detention did not transform into an arrest. In that case, "[r]esponding to a 911 call and mistakenly believing [the plaintiff] to be a burglary suspect, police pulled him over, ordered him out of his truck at gunpoint, handcuffed him, and placed him in the back of a patrol car. Police then brought [the plaintiff] to the scene of the reported incident, where it was confirmed that he was not the suspect. He was returned to his truck and released less than an hour after he was initially detained." (*Id*. at p. 989.) The plaintiff argued that "his detention went beyond a valid investigatory

8

stop" because "he was ordered from his truck at gunpoint, . . . handcuffed, . . . put in the back of a patrol car, . . . detained for between forty-five minutes and an hour, and . . . less intrusive options were available to police." (*Id*. at p. 991.) Viewing the facts of the detention "in the context of the totality of the circumstances," the Ninth Circuit rejected the plaintiff's argument. (*Ibid*.) According to the appellate court, summary resolution of the plaintiff's constitutional claims was proper because "[t]he whole point of an investigatory stop, as the name suggests, is to allow police to *investigate*, in this case to make sure that they have the right person. For police to draw their guns in ordering [the plaintiff] from the truck, when unsure if he was armed; for police to handcuff [the plaintiff] in the back of a . . . patrol car, when unsure of who he was; and for police to bring him back to [the scene of the reported criminal activity]—this was not, under the circumstances, an unreasonable way of finding out if [the plaintiff] was the person they were looking for. Our cases have made clear that an investigative detention does not automatically become an arrest when officers draw their guns, [citation], use handcuffs [citations] . . . . Viewed in context, [the officers'] conduct was reasonable." (*Id*. at pp. 991-992.)

The Ninth Circuit concluded, "Of course, it is unfortunate that an innocent man, in the wrong place at the wrong time, was inconvenienced for up to an hour. But by the same token, this investigative stop worked as it should. The detention was brief, calculated solely to make sure they had the right man, and resulted in [the plaintiff's] prompt vindication. '*Terry* accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk' as well. [Citation.] Courts cannot prevent mistakes such as this from taking place; we can only ensure that mistakes are kept to a minimum by requiring officers to act reasonably, for articulable reasons, and not on a hunch." (*Gallegos*, *supra*, 308 F.3d at p. 992.) As in *Gallegos*, the officers did not act on a hunch. They responded to LAPD communications of a 911 call reporting a burglary or attempted burglary, detained the person identified by the caller, acted within a short amount of time to dispel the possibility of criminal activity based specifically on the communications they had received and then released him. Such an investigative stop

9

under the totality of the circumstances, as a matter of law, was a detention based on reasonable suspicion that did not amount to an arrest without probable cause.

Lieberman's reliance on *In re Antonio B.* (2008) 166 Cal.App.4th 435 is misplaced. According to Lieberman, that case demonstrates that "handcuffing a suspect did not convert a detention into an arrest, such as when at the time of the detention, the officer had a reasonable basis to believe the detainee presented *a physical threat to the officer or would flee*," and he presented no such "danger." The physical threat or possibility of fleeing described in *In re Antonio B.*, however, was merely a summary of certain examples of when a handcuffing did not render a detention an arrest. Other examples included when "police officers conducted the stops based upon reports of violent felonies by persons matching the descriptions of the detained suspects and/or their vehicles [citations], or reports indicating that the suspect was armed [citations] or that the suspect was seen leaving the scene of an attempted burglary [citation]." (*Id.* at p. 441.) The appellate court in that case held that detention of the suspect constituted an arrest requiring probable cause because "no evidence . . . suggest[ed] that the officers had any basis to believe that [he] posed a danger to them or that handcuffing him was necessary to effectuate the purpose of the stop, i.e., to determine whether [he] had been smoking marijuana." (*Id.* at p. 442.) Unlike *In re Antonio B.*, this case fits into the examples in which handcuffing did not render a detention an arrest because, at the time of Lieberman's detention, the officers had reports of a burglary or attempted burglary, crimes in which undisputedly suspects often have weapons or tools that they can use as weapons, by a man matching Lieberman's description who had left the scene. *In re Antonio B.* thus does not support Lieberman's suggestion that handcuffing is justified in a detention only when the suspect constitutes a physical threat or a possibility exists that he may flee.[3]

---

[3]     Because Lieberman's detention was proper, and not a wrongful arrest without probable cause, we need not decide whether an unlawful arrest, standing alone, would support a violation of Civil Code section 52.1, subdivision (b).

10

b.    *The excessive force question*

Lieberman also contends that summary resolution of his battery and negligence causes of action was improper because triable issues of material fact exist as to whether the police officers used excessive force by handcuffing him.

"[A] police officer must have control over the manner and means of making an arrest or detention." (*Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1273 (*Edson*).)  "[C]laims [of excessive force] are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard . . . ." (*Graham v. Connor* (1989) 490 U.S. 386, 388 (*Graham*).)  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of '"the nature and quality of the intrusion on the individual's Fourth Amendment interests"' against the countervailing governmental interests at stake.  [Citation.]  Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  [Citation.]  Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' [citation], however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. [Citation.]" (*Id.* at p. 396.)  State law battery and negligence causes of action based on the use of excessive force are evaluated under the same standard of objective reasonableness.  (*Edson*, at p. 1274 [police officer battery cause of action]; *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 514 [negligence cause of action against police officers].)

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  [Citation.] . . . With respect to a claim of excessive force, the . . . standard of reasonableness at the moment applies:  'Not every push or shove, even if it may later

11

seem unnecessary in the peace of a judge's chambers,' [citation], violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. [¶] As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. [Citations.]" (*Graham*, *supra*, 490 U.S. at pp. 396-397.)

According to Lieberman, summary resolution of his battery and negligence causes of action based on excessive force was improper because "[t]he same facts [that] supported [the officers'] . . . decision not to prone [him] out—his obvious advanced age and appearance—should have supported a choice not to handcuff him. Per their training, [the officers] had discretion not to handcuff, in the presence of extenuating circumstances. They foolishly elected to proceed and continue to handcuff, and did so in a manner causing pain, discomfort and bleeding; [h]e was caused internal shoulder and wrist injuries. [¶] No force was needed here."

Although the officers may have had discretion not to handcuff Lieberman, their decision to do so does not establish excessive force. As with his claim that the detention amounted to a wrongful arrest, Lieberman incorrectly assumes that his advanced age and appearance eliminated the possibility that he had committed a crime. Such is not the case. Given the LAPD communications of a burglary or attempted burglary by a man who matched Lieberman's description and was detained by police in the reported location, the officers acted objectively reasonable in handcuffing Lieberman as they began and conducted their investigation. As noted, based on the information they received from LAPD communications, the officers considered their response as one to "a high-priority crime" and Lieberman's detention "a high risk traffic stop." In addition, the officers considered that, "based on the type of radio call that [they] were responding to—and . . . burglary suspects could have . . . weapons and tools [that] can be used as

12

weapons . . . ." Their decision not to require him to lie prone on the ground while they handcuffed him demonstrates they evaluated the circumstances based on his advanced age and appearance; it does not, as Lieberman suggests, establish their decision to handcuff constituted excessive force.

Lieberman's primary claim on appeal is that no force was necessary and thus that handcuffing, which necessarily involves some force, was excessive. He also suggests that the manner of the handcuffing exacerbated a prior shoulder injury and caused his wrist to be cut, creating a triable issue of material fact on the use of excessive force. Despite his failure to dispute defendants' description of a routine handcuffing based on his own deposition testimony, he stated in his declaration supporting his opposition to summary judgment that the officer who handcuffed him "forcefully grabbed [his] hand, yanked it downward and twisted it painfully, as [he] complained that the handcuffs were hurting [him]."

Nevertheless, the declaration did not establish a triable issue of material fact on the question of excessive force. The officers kept Lieberman in handcuffs for between five and 25 minutes while they began to conduct their investigation; according to Lieberman, he spent five minutes in handcuffs. The officers undisputedly took the handcuffs off before they had completed the investigation and determined he had no criminal background and had not committed a crime. Handcuffing necessarily involves some degree of force (*Wertish v. Krueger* (8th Cir. 2006) 433 F.3d 1062, 1067), and the manner of handcuffing described by Lieberman in his declaration does not go beyond that inherent force. Moreover, Lieberman admittedly did not inform the handcuffing officer that he had a prior shoulder injury. His wrist bled upon the release of the handcuffs. He refused medical assistance, put a Band-Aid on the cut and, when released by the officers, immediately resumed his duties as a census worker by continuing his house visits for that afternoon. Lieberman's claimed injuries thus did not preclude summary resolution of his battery and negligence causes of action based on the use of excessive force. (*Rodriguez v. Farrell* (11th Cir. 2002) 280 F.3d 1341, 1351-1353 [summary resolution of excessive force claim, as "[p]ainful handcuffing, without more, is

13

not excessive force in cases where the resulting injuries are minimal"; "[w]hat would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time"].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                    ROTHSCHILD, Acting P. J.
We concur:



    JOHNSON, J.



    MILLER, J.*

---

*     Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.